**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| PHILIPPE LAURENT,<br><br>Plaintiff,<br><br>v.<br><br>JP MORGAN CHASE, N.A., and all persons unknown claiming any legal or equitable right title, estate lien, or interest in the property described in the complaint adverse to Plaintiff's title, or any cloud on Plaintiff's title thereto: Plaintiff's title thereto; and DOES 1-100,<br><br>Defendants. | Case No. 2:14-cv-00080-APG-VCF<br><br>**ORDER**<br><br>(Dkt. #18) |

This case is one of many arising out of the foreclosure crisis in Las Vegas, Nevada, which has resulted in disputes over the effect of a non-judicial foreclosure sale for unpaid dues and assessments conducted by a homeowner's association ("HOA"). *Pro se* plaintiff Philippe Laurent ("Laurent") filed this lawsuit on January 16, 2014 to quiet title to a property purchased through an HOA foreclosure sale. (Dkt. #1.) Before me is defendant JP Morgan Chase Bank, N.A.'s ("Chase") motion for summary judgment. (Dkt. #18.)

**I.     BACKGROUND**

The property at issue, located at 417 Grand Augusta Lane in Las Vegas, Nevada, previously was owed by Marc A. Saggese. (Dkt. #18-1.) The property was subject to a first deed of trust recorded in 2006, which identified Steward Financial, Inc. as the lender, Mortgage Electronic Registration Systems, Inc., (as nominee for the lender) as the beneficiary, and Financial Title Company as the trustee. (*Id*.) In 2009, the deed of trust was assigned to La Salle Bank NA as trustee for Washington Mutual Mortgage Pass-Through Certificates WMALT Series 2007-OA1 Trust. (Dkt. #18-2.)

The property is subject to the 1997 Covenants, Conditions and Restrictions ("CC&Rs") recorded by the HOA, Palisades Community Association ("Palisades"). (*See* Dkt. #18-3.) On

February 27, 2009, Palisades, through its agent Angius & Terry Collections, LLC ("A&T"), recorded a notice of delinquent assessment lien. (*Id*.) The stated amount due as of February 25, 2009, was $1,424.32. (*Id*.) On September 11, 2009, A&T recorded a notice of default and election to sell, which listed the amount due as of September 8, 2009, as $3,692.32. (Dkt. #18-4.)

On June 29, 2012, ATC Assessment Collection Group ("ATC") recorded a notice of sale, which listed the total unpaid balance due as of June 27, 2012, as $11,835.11 (Dkt. #18-5.) The sale occurred on October 31, 2012. (Dkt. #18-6 at ¶ 3.) The total amount on the unpaid balance due on that date was $12,775.50. (Dkt. #22 at 75, ¶ 5.) Prior to the sale, through an email message, ATC directed that the opening bid was to be announced as $8,015.40. (Dkt. #18-6 at ¶ 4.) ATC further directed that the following announcement be made prior to the auction:

> You are hereby being notified by the Association, the beneficiary, through its foreclosure agent, that the opening bid does not include the super-priority lien amount of $4,760.10, as well as any other fees or collection costs incurred by the Association in an attempt to collect a debt. That the super-priority lien amount will still be a lien on the property once the sale is completed. You are hereby being notified by the Association, the beneficiary, through its foreclosure agent, that said lien may affect the property, title to the property or value of the property. The purchaser buys this property with full knowledge and understanding of same.

(*Id*. at ¶ 5.) Heather Ebneter, the auctioneer who cried the sale on October 31, 2012, had a printout of the email containing the announcement. (*See id*. at ¶ 6.) Ms. Ebneter made the announcement at 10:24 a.m., which she noted on the email printout along with her signature. (*Id*.) Ms. Ebneter then commenced the sale with an opening bid of $ $8,015.40 per ATC's instructions. (*Id*. at ¶¶ 4, 7.)

Laurent, as owner of New Start Asset Recovery, LLC ("New Start"), did not attend the auction. (Dkt. #18-7 at 3:3-13; 6:1-16.) Rather, Laurent sent an authorized representative, Dany Garcia, to the auction on New Start's behalf with instructions that he could bid up to approximately $62,500 for the property. (*Id*. at 6:7-8:2.) Mr. Garcia, on behalf of New Start, placed the winning bid. (Dkt. #18-6 at ¶ 8.)

2

A trustee's deed upon sale was recorded on November 2, 2012 (the "2012 deed"). (Dkt. #18-8.) The deed stated that ATC, as Palisade's agent:

> does hereby grant and convey, but without warranty expressed or implied to New Start Asset Recovery, LLC (herein called Grantee), that portion of [Palisade's] right, title and interest secured by [Palisade's] lien under NRS 116.3116 in and to [417 Grand Augusta Lane].

(*Id*.) The 2012 deed recited that the conveyance was made pursuant to the CC&R's and Nevada Revised Statute 116.3116 *et seq.* (*Id*.) The 2012 deed also stated that New Start was the highest bidder and paid $18,500 "in lawful money of the United States, or by the satisfaction, pro tanto, of the obligations then due and payable to the association claimant set forth in NRS 116.3116 et. seq." (*Id*.)

A grant, bargain and sale deed was recorded on March 27, 2013, transferring the property from New Start to the Philippe G. Laurent and Perrine A. Laurent, as Trustees of the Philippe G. Laurent and Perrine A. Laurent Living Revocable Trust. (Dkt. #18-9.) On April 1, 2013, a grant, bargain and sale deed was recorded, which transferred the property to Philippe Laurent from the Philippe G. Laurent and Perrine A. Laurent Living Revocable Trust. (*Id*.)

## II. DISCUSSION

### A. Legal Standard

Summary judgment is appropriate if the pleadings, discovery responses, and affidavits demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden

3

then shifts to the non-moving party to go beyond the pleadings and set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000). I view the evidence, and make reasonable inferences, in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

**B. Evidentiary Objection**

Laurent "disputes any and all affidavits, as well as the information that [Chase] state[s] is undisputed to which neither party … could know to be fact as they were not a party to any such contract and/or agreement[,]" which I will construe as an evidentiary objection. (Dkt. #22 at 6:12-14.) This objection is broad and non-specific. I decline to sift through the evidence that Chase uses to support its motion and speculate as to what material is objectionable and what evidentiary objection Laurent may wish to apply to particular affidavits or evidence. *See Burch v. Regents of the Univ. of California*, 433 F. Supp. 2d 1110, 1126 n. 16 (E.D. Cal. 2006) (noting that in the absence of evidentiary support a court is not required to search the record for the party).

Moreover, the only affidavit Chase uses to support its motion (Dkt. #18-6) satisfies the requirements of Federal Rule of Civil Procedure 56. *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rule of Civil Procedure 56."). Thus, I overrule Laurent's evidentiary objection.

**C. Quiet Title**

Under Nevada law, any person may bring a claim against others who claim an estate or interest in real property "for the purpose of determining such adverse claim." Nev. Rev. Stat. §40.010. In an action under § 40.010 to quiet title to real property, "each party must plead and prove his or her own claim to the property in question." *Chapman v Deutsche Bank Nat'l Trust*

4

*Co.*, 309 P.3d 1103, 1106 (Nev. 2013) (en banc) (quotation omitted). Therefore, a plaintiff's right to relief depends on superiority of title. *Id.* (quotation omitted).

Laurent provides two arguments in opposition to Chase's motion. First, Laurent appears to argue that Chase has no authority to foreclose on the first deed of trust. Chase responds that this argument sounds in wrongful foreclosure, a claim which Laurent has not alleged. Second, Laurent argues that he obtained superior title over the property at the foreclosure sale.

### 1. First Deed of Trust

Laurent contends that there is no "authenticated validation" of the deed of trust because neither he nor Chase were parties to the mortgage agreement. Chase, however, asks me to take judicial notice of the deed of trust. A court may "judicially notice a fact that is not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). This includes matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (quotation omitted). I will take judicial notice of the fact that the deed of trust was recorded as an encumbrance on the property. The signed and recorded document is evidence that the deed of trust is valid, and Laurent has not presented any competent, authenticated evidence to the contrary.

Laurent also contends that Chase, as a debt collector, does not have a "vested entitlement" to the property and is thus required to collect the debt from the prior owner, rather than foreclose on the property. He first argues that 15 U.S.C. § 1692i requires that debt collectors "seek [a] judicial proceeding." (Dkt. #22 at 5:10-11.) This section of the Fair Debt Collection Practices Act deals with the venue in which a debt collector may bring legal actions against a consumer, but it does prohibit a debt collector from enforcing a deed of trust through a non-judicial foreclosure. Accordingly, 15 U.S.C. § 1692i does not apply here.

Second, Laurent relies on the Affidavit of Authority in Support of Notice of Default and Election to Sell (Dkt. #22 at 55-58) to argue that Chase cannot initiate a foreclosure because it is not the owner of the note. The affidavit indicates that Chase is "the current beneficiary of the deed of trust or the authorized representative of the current beneficiary." (*Id.* at 55, ¶ 1.) The affidavit further says that the beneficiary under the deed of trust is the holder of the note. (*Id.* at

5

56, ¶ 3.) Laurent provides no legal support for the proposition that an authorized representative cannot initiate a non-judicial foreclosure on behalf of the beneficiary of the deed of trust. *See Karl v. Quality Loan Serv. Corp.*, 759 F. Supp. 2d 1240, 1246 (D. Nev. 2010) (holding foreclosure was not improper when an agent of the beneficiary of the deed of trust recorded notice of default).

Finally, Laurent argues that Chase has not disclosed an "accounting" of the amount paid to secure the debt and that it voluntarily assumed the risk by purchasing the debt. However, Laurent fails to explain how either of these issues, even if true, would preclude Chase, as an authorized representative of the beneficiary of the deed of trust, from initiating a foreclosure.

Consequently, Laurent has not established a genuine issue of material fact as to the deed of trust, or whether Chase has the authority to initiate a non-judicial foreclosure as an authorized representative of the beneficiary of the deed of trust.

**2. Lien Priority**

Laurent claims title through the October 31, 2012 foreclosure sale and the 2012 deed. Chase argues that because the Supreme Court of Nevada in *SFR Investments Pool 1, LLC v. U.S. Bank, N.A.*, 334 P.3d 408 (Nev. 2014) (en banc) confirmed the existence of "two HOA liens" with different priorities pursuant to NRS 116.3116 —a super-priority lien and a sub-priority lien —the HOA may split up the liens and foreclose on one independently of the other. Chase contends that Palisades foreclosed only on its sub-priority lien and therefore the 2012 deed does not convey superior title to Laurent. In response, Laurent asserts that the 2012 deed conveyed superior title to him because Palisades did foreclose on its super-priority lien, thereby extinguishing the first deed of trust. The parties assume that an HOA can split its lien into sub- and super-priority portions and foreclose on one portion independent of the other.

The Supreme Court of Nevada has not directly addressed whether an HOA has two liens that it can enforce independent of one another. That Court described the HOA foreclosure statutory scheme as follows:

> As to first deeds of trust, NRS 116.3116(2) … splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

*SFR Investments*, 334 P.3d at 411. The court was not confronted with the question of whether an HOA could split its lien and non-judicially foreclose on one piece independent of the other. It is thus unclear from this language whether the HOA has a single lien that is split into two pieces for the limited purposes of payment and determining priority with respect to the first deed of trust, or whether the statute splits the lien into two separately enforceable pieces.

However, I need not resolve this question because even assuming that the sub- and super-priority pieces of an HOA lien are two separately enforceable liens, Chase has met its burden of showing it has superior title, and there are no genuine issues of material fact.[1]

Here, presuming there are two separately enforceable liens, superiority of title is dependent upon which lien Palisades foreclosed on—the super-priority or sub-priority lien. If Palisades foreclosed on its super-priority lien, then Laurent has superior title under *SFR* because the first deed of trust was extinguished. If Palisades foreclosed on its sub-priority lien, then Chase has superior title because the first deed of trust was not extinguished and Laurent took the property subject to that lien.

To determine which lien Palisades foreclosed on, I first look to the 2012 deed because in Nevada, "'it is the intent of the parties to a deed which … must determine the nature and extent of the estate conveyed.'" *Dayton Valley Inv'rs, LLC v. Union Pac. R. Co.*, 664 F. Supp. 2d 1174, 1185 (D. Nev. 2009) (alterations omitted) (quoting *City Motel, Inc. v. Nevada ex rel. State Dep't of Highways*, 336 P.2d 375, 377 (Nev. 1959)). "[T]he intent of the parties to a deed is determined from 'all the circumstances surrounding the transaction' … [which] includes but is not limited to, the language of the instrument." *Id.* (quoting *Kartheiser v. Hawkins*, 645 P.2d 967, 968 (Nev. 1982); *see also Lowden Inv. Co. v. Gen. Elec. Credit Co.*, 741 P.2d 806, 809 (Nev. 1987) (stating

---

[1] Laurent supports his opposition to Chase's motion with an affidavit making the following declarations: (1) that New Start purchased the property "free and clear of all security interests junior to the association's lien, including the bank's first deed of trust for $18,500.00" (Dkt. #22-1 at ¶ 6); and (2) that the "foreclosure pursuant to NRS 116.3116 extinguished the first security interest on the Subject Property." (*Id.* at ¶7.) Because these statements constitute legal arguments and conclusions, rather than declarations of fact, I will not consider them. *See Burch v. Regents of the Univ. of California*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006) ("[S]tatements in declarations based on speculation or improper legal conclusions, or argumentative statements, are not facts and likewise will not be considered on a motion for summary judgment.").

7

1  that parol evidence "is not admissible to vary or contradict the terms of a written agreement" but
2  "is admissible to resolve ambiguities in a written instrument").

3        Here, the 2012 deed conveys "that portion" of Palisades' right, title, and interest secured
4  by its lien pursuant to NRS 116.3116.  It is unclear from the deed what "portion" the deed is
5  referring to, and it is unclear whether the reference to a "portion" means Palisades was conveying,
6  or attempting to convey, only the sub- or super-priority portion of its lien.  The deed therefore is
7  ambiguous.  However, in light of all the circumstances surrounding the transaction, no genuine
8  issue of fact remains that if Palisades can split its lien and foreclose only one portion of it, then
9  Palisades foreclosed on its sub-priority lien at the auction

10        The announcement at the auction made clear that "the super-priority lien amount will
11  still be a lien on the property once the sale is completed."  The auctioneer also announced that the
12  super-priority lien "may affect the property, title to the property or value of the property" and the
13  "purchaser buys this property with full knowledge and understanding of same."  Thus, all bidders
14  were advised that the super-priority lien was not being sold and would remain as a lien on the
15  property.  There is no dispute that Dany Garcia was present at the auction and was authorized to
16  bid on behalf of New Start and Laurent.  Laurent cites to no evidence or law for the proposition
17  that because the $18,500 winning bid was enough to satisfy the unpaid balance of both liens that
18  the terms announced before the auction changed at some point during the bidding, or that the
19  auction was otherwise converted into one for the super-priority lien.[2]

20        Laurent contends that the minimum bid announced at the auction is not evidence that
21  Palisades intended to foreclose on only the sub-priority portion of its lien because the opening bid
22  can be set at any amount.  He further contends that his $18,500 winning bid is determinative of
23  the parties' intent because the bid was sufficient to satisfy the unpaid balance of both liens.
24  However, ATC did not set the $8,015.40 opening bid at some random amount.  Rather, as

---

[2] For example, there is no evidence that the parties agreed the auction would turn into one for the super-priority lien if the bidding reached a certain amount, or that the auctioneer announced a change to the terms of the auction after bidding commenced.

8

announced before the auction, the bid represented the sub-priority lien and it did not include the super-priority lien amount of $4,760.10.

In addition, although Laurent points to the notices that were recorded before the sale indicating that Palisades was foreclosing on the lien and listing the total amount of the unpaid balance representing both liens, the terms of the auction were changed before bidding commenced. *See* Restatement (Second) of Contracts § 28(2) ("Unless a contrary intention is manifested, bids at an auction embody terms made known by advertisement, . . . or other publication of which bidders are or should be aware, as modified by any announcement made by the auctioneer when the goods are put up."). Laurent again cites no law for the proposition that the terms of sale could not be altered prior to the start of the auction. New Start and Laurent, through Dany Garcia, were on notice of the terms of the sale before the auction commenced. Laurent or his agent could have decided not to bid in light of the announcement.

Finally, Laurent argues that the way in which ATC distributed the auction proceeds establishes that Palisades intended to foreclose on its super-priority lien. There is no dispute that ATC used the auction proceeds to satisfy the total amount of the unpaid balance of both the sub- and super-priority portions of the lien. (Dkt. #22 at 64-68.) According to Laurent, this establishes that "the full amount of the lien was satisfied at the sale, not just the minimum bid." (Dkt. #22 at 7:17.) Chase argues that ATC's post-sale distribution of the proceeds does not retroactively change which lien Palisades intended to foreclose upon.

ATC's post-sale distribution of the auction proceeds does not alter the pre-sale announcement that Palisades was foreclosing on its sub-priority lien at the auction. Heather Oliver, ATC's Senior Trustee Sales Officer, declared "[o]n the date of foreclosure, the opening bid was $8,015.40, which reflected the non-priority portion of the lien." (Dkt. #22 at 75, ¶ 6.) Ms. Oliver further declared that "[t]he proceeds from the foreclosure sale were distributed pursuant to NRS 116.31164 as follows: $10,221.32 to the Association; $2,554.18 to ATC; and $5,724.50 to LaSalle Bank." (Dkt. #22 at 76, ¶ 9.)

NRS 116.31164 requires that the proceeds of a sale be applied in the following order:
(1) The reasonable expenses of sale;

9

> (2) The reasonable expenses of securing possession before sale, holding, maintaining, and preparing the unit for sale …;
> (3) *Satisfaction of the association's lien*;
> (4) Satisfaction in the order of priority of any subordinate claim of record; and
> (5) Remittance of any excess to the unit's owner.

Nev. Rev. Stat. § 116.31164(3)(c) (emphasis added). ATC thus applied the auction proceeds based on its interpretation of NRS 116.31164(3)(c)'s distribution requirements, but there is no evidence that ATC had any intent to alter which lien Palisades foreclosed on at the auction.[3] Ms. Oliver's deposition testimony that the $18,500 bid "covered the full balance owing[,]" including the super-priority lien, is consistent with her affidavit and also demonstrates that ATC paid off both liens based on its interpretation of the statute because it had sufficient funds to do so.[4] (Dkt. #22 at 73:3-8.) Laurent cites to no authority for the proposition that because ATC used the auction proceeds to satisfy the unpaid balance of both liens, the foreclosure sale was retroactively converted into one for the super-priority lien despite the announcement to all bidders that the super-priority lien would remain on the property.[5] Accordingly, if Palisades can split its lien and foreclose on them separately, then no issue of fact remains that Palisades foreclosed on its sub-priority lien at the auction.

This result is consistent with the Uniform Common Interest Ownership Act of 1982, which acknowledges that while the split-lien approach represents a "significant departure from existing practice, the [9] months' priority for the assessment lien strikes an equitable balance between the need to enforce collection of unpaid assessments and the obvious necessity for protecting the priority of the security interests of lenders." Uniform Common Interest Ownership

---

[3] The issue of whether ATC's interpretation of NRS 116.31164(3)(c)'s distribution requirements was correct or incorrect has yet to be decided by the Supreme Court of Nevada, and I decline to address it at this time because it is not relevant to my decision.

[4] Laurent argues that Ms. Oliver's deposition testimony demonstrates that his $18,500 bid "included" the super-priority amount. However, this misconstrues her testimony because she testified that the $18,500 "covered" the full balance, such that it was sufficient to pay off both liens.

[5] In addition, Laurent fails to explain how Palisades or ATC could have known the winning bid would exceed the unpaid balance of both liens in order to "include" the super-priority lien in the auction because the sale of the property goes to the highest bidder as determined at the auction.

10

Act of 1982, § 3-116, cmt. 1; *see SFR*, 334 P.3d at 413 (noting that because the UCIOA's official comment was available to the legislature when it enacted NRS Chapter 116, it can aid in statutory construction). The Act goes on to note that "[a]s a practical matter, secured lenders will most likely pay the [9] months' assessments demanded by the association rather than having the association foreclose on the unit." *Id*. Under the circumstances here, finding that Palisades foreclosed on the super-priority lien would contravene the equitable balance contemplated by the Act. The pre-auction announcement that the super-priority lien was not being foreclosed on would have impacted who bid on the property and how much. Specifically, a reasonable first deed of trust holder, upon hearing the announcement, would assume its secured interest was not in jeopardy because only a junior lien was being foreclosed. The first deed of trust holder therefore would not be incentivized to bid to protect its security interest. Additionally, the announcement would have affected other bidders' decisions on whether to bid and in what amount. Changing the terms of the auction post-sale would be unfair to both the first deed of trust holder and other potential bidders.

In sum, upon considering all the circumstances surrounding the transaction, no issue of fact remains that if Palisades can split its lien and enforce the sub- and super-priority liens separately, then Palisades foreclosed on its sub-priority lien.[6] The announcement made before the sale parallels the language in the 2012 deed conveying "that portion" of the Association's right, title and interest secured by its lien pursuant to NRS 116.3116 and thus confirms that the deed accurately reflects the parties' intended transaction. The 2012 deed therefore conveyed the property to New Start, and subsequently to Laurent, subject to the lien created by the first deed of trust. Because Palisades foreclosed on only its sub-priority lien, Chase has met its burden of

---

[6] Laurent does not argue that an HOA cannot split its lien. But if an HOA cannot split its lien as a matter of law, then I predict that under the circumstances of this case, the Supreme Court of Nevada would hold that the HOA sale, which attempted to split the lien and sell only the sub-priority portion, is void or should be set aside on equitable grounds. *See 7912 Limbwood Court Trust v. Wells Fargo Bank, N.A.*, No. 2:13-cv-00506, 2015 WL 5123317, at *4-5 (D. Nev. Aug. 31, 2015); *Shadow Wood Homeowners Ass'n, Inc. v. New York Cmty. Bancorp, Inc.*, No. 63180, --- P.3d ----, 2016 WL 347979, at *5 (Nev. Jan. 28, 2016) (en banc).

showing that it has superior title to Laurent. As such, I grant Chase's motion for summary judgment.

### D. Attorney's fees and costs

Laurent requests $2,462 in attorney's fees and costs "to the extent that the Court finds that [Chase's] Motion was based on misrepresentations and concealment of the true facts available to them and that it should never have been filed with the Court in the first place." (Dkt. #22 at 9:18-19.) However, this is not a proper basis for requesting attorney's fees and costs. *See Rowland v. Lepire*, 662 P.2d 1332, 1336 (Nev. 1983) (explaining that attorney's fees are recoverable only if permitted by statute, rule, or contractual provision); *MRO Commc'ns, Inc. v. Am. Tel. & Tel. Co.*, 197 F.3d 1276, 1281 (9th Cir. 1999) (holding state law governs fee applications based on federal diversity jurisdiction). Moreover, I have granted Chase's summary judgment motion; it thus was not based on misrepresentation or concealment of facts. I therefore deny Laurent's request for attorney's fees and costs.

### III. CONCLUSION

IT IS THEREFORE ORDERED that defendant JP Morgan Chase Bank, N.A.'s motion for summary judgment **(Dkt. #18) is GRANTED**.

IT IS FURTHER ORDERED that Judgment is hereby entered in favor of defendant JP Morgan Chase Bank, N.A. and against plaintiff Philippe Laurent.

DATED THIS 31st day of March 2016.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE